State, Paulison, pros., v. Taylor, Collector of Paterson.

---

STATE, PAUL R. PAULISON, PROSECUTOR, v. CHARLES N. TAYLOR, COLLECTOR OF TAXES OF THE CITY OF PATERSON.

1. Charter of Paterson, approved March 25th, 1869, construed in assessment of taxes, by reference to acts of March 19th, 1851, March 10th, 1842, November 4th, 1797, and June 10th, 1799.
2. Assessor not required to take the oath or affirmation of taxpayer.
3. No error in form of assessing lots by blocks, where no fraud or prejudice is shown.
4. Where a farm lying within the city limits is mapped in lots on city atlas, no error to assess in lots, and not by the acre.
5. Facts show there was a review by assessors, so as to make the taxes equal in the several wards.
6. Commissioners of appeal could not add one hundred and thirty lots to the number assessed, without notice to the taxpayer.
7. The special act of 1842, relating to taxes of Passaic county and Paterson, appoints second Monday in July as the time for meeting of county board.
8. A liberal construction must be given to all tax laws for public purposes.

State, Paulison, pros., v. Taylor, Collector of Paterson.

On *certiorari*.   In matter of taxation.

Argued at February Term, 1871, before Justices SCUDDER and VAN SYCKEL.

For plaintiff, *A. B. Woodruff.*

For defendant, *S. Tuttle.*

The opinion of the court was delivered by

SCUDDER, J.   The prosecutor was assessed, in 1870, for nine hundred and sixty lots of land within the corporation boundaries of the third ward of the city of Paterson, for state, county, and city purposes.

The *certiorari* brings up this assessment and the proceedings of the collector therein.

Taxes are assessed in the city of Paterson under the charter of March 25th, 1869.   (*Laws, p.* 733.)

By the seventy-second section of this charter, " the assessors of the several wards of said city shall assess upon the persons and property within said city, and the collector of revenue of said city shall collect the state and county taxes, by law directed or required to be assessed and collected within said city, and also the taxes required to be assessed and collected for the use of the said city, in the same manner, except as herein altered, and within the same time as the assessors and collectors of the township of Paterson were required by law to assess and collect the state and county taxes in the said township."

The township of Paterson was incorporated as the city of Paterson, by charter, approved March 19th, 1851.   (*Laws, p.* 444.)

The reference in the above section to the manner and time of assessment and collection of taxes, must relate to the law existing at the time the first charter was passed, in 1851, for there has been no township of Paterson since.   The law then in force relating to taxes in Paterson, was a special statute, passed March 10th, 1842, which, in section seven, enacted that the acts of November 4th, 1797, and of June 10th, 1799,

(*Elmer's Dig.* 552, 553), and the several supplements thereto, should remain in force, except so far as they were inconsistent with the provisions of that act.

These laws, and the charter of 1869, must, therefore, be our rule in determining the questions raised upon this proceeding.

The first objection to the tax is that the assessor, before the assessment, did not require of, or take the oath or affirmation of said Paulison, in regard to the amount or value of his real estate, as required by section eight of the supplement of 1866.

This statute never applied to the township of Paterson, and there is no such requirement in the city charter, or the previous acts. The sections prescribing the duties of assessors, as to the times and manner of assessment, are section one of the act of 1799, and section one of the act of 1842 ; neither requires the oath or affirmation of the tax-payer to be taken when assessment is made.

The next reason for setting aside the tax is, that the assessor did not name each lot, and the value of each lot, before carrying it out in total, as required by section seventy-five of the city charter. The requirements of this section are specific in these particulars, and the reasons for them are easily understood, in affording the means for separate examination of each parcel of land by the owner, and by the city and county boards of assessors, and the commissioners of appeal. If there were any attempted fraud or concealment shown, by which the prosecutor has been prejudiced, and for which purpose this specification of lots has been avoided, this court would certainly interpose and set aside the assessment; but as this does not appear, the requirement of the section must be held as directory, and matter of convenient arrangement only.

Similar exceptions have been overruled in this court. *State, Coles, pros., v. Platt,* 4 *Zab.* 108 ; *State, Roberts, pros., v. Jersey City,* 1 *Dutcher* 525.

These are defects of form, and not of substance, and it does not appear that the plaintiff is injured by a partial performance of these requirements.

State, Paulison, pros., v. Taylor, Collector of Paterson.

The whole farm of the prosecutor is marked off in blocks and sub-divided into lots, and these blocks appear to have been assessed, instead of each one of the nine hundred and sixty lots into which the whole is divided. A more minute specification would be needless, as the property is situated. It is added to this exception, that the assessor erroneously assessed said property by city lots, whereas said property constitutes a farm, and should have been assessed as farm land, by the acre. He has acted strictly within the seventy-third section of the charter, which requires assessors to make their assessments on the lands, tenements, and real estate of the said city, as nearly as may be, in accordance with the atlas maps made by the board of aldermen for that purpose. There is, however, no merit, in fact, in this objection. Can a man keep a farm, or large garden, in the midst of a city, or within city limits, and claim that it shall be valued only according to the uses to which he applies it, without regard to its actual market value? The charter requires that property, to be assessed, must be valued at the true, full, and fair value thereof. This farm lies within the outside boundaries of the city, and improvements are rapidly reaching out towards it. Its value is variously estimated in the evidence from $50,000 to $70,000, and over. There are about eighty acres of land, divided into nine hundred and sixty lots, taxed at an average of $40 per lot. This makes an aggregate valuation of $38,400. There is certainly no wrong done the prosecutor in this method of estimating his property.

It is also alleged against the legality of this tax, that the board of assessors did not review the assessments, so as to make them just and equal as possible in the several wards of the city, as required by the seventy-fifth section of the charter.

There is evidence in the case that the board of assessors acted carelessly and with too great haste in making this review, and that the books of all the wards were not before them when they met, on the first Monday of July, as required by the charter, but they continued in session for the entire week, making their examinations; met the county board on

the second Monday in July, and afterwards, during which time, or a part of it at least, all of these books were before them, and the whole matter of assessments was considered. We have no minutes of the proceedings of the board before us, and the objections made are founded upon the recollection of some of the assessors who were present in the board.

There must be every proper intendment in favor of the proceedings of public officers, especially where no substantial wrong appears to have resulted to the plaintiff, by reason of any alleged omission of duty. But here there is a defect of evidence to prove the allegation. The recollection of witnesses is too loose to set aside an assessment of public taxes, where better evidence may be had. It should appear by their minutes, or entries made at the time, that no such revision and approval was made, as is required by the charter, or if no entries or minutes were made, that should be shown before evidence is offered to impeach their action. There is no return to the writ, or evidence by which this sufficiently appears.

Another reason assigned is, that the commissioners of appeal in cases of taxation added one hundred and thirty lots to the number returned by the assessor, without notice to the prosecutor. It appears that the farm was assessed originally as eight hundred and thirty lots, valued at $60 each; that upon his application to the commissioners of appeals they reduced the valuation of lots to $40 each, but in his absence afterwards, without notice, and without his knowledge, added one hundred and thirty lots to the number estimated to be in the farm. It is required by section two of the act of 1848, (*Nix. Dig.* 945,*) that five days' notice shall be given before such increase shall be made, and such notice is essential. *State* v. *Warford,* 3 *Vroom* 307. This act was passed before the charter of 1851, but not before the special tax act of 1842, and probably does not apply to the city of Paterson. If this statute is not in force there, then in looking over the earlier laws of 1797 and 1799, we find that they are silent upon the subject of notice upon the increase of tax

* *Rev.,* p. 1149, § 56.

by the commissioners. But without any express statutory direction, such action in the absence of the prosecutor, without notice to him, or an opportunity of being heard, where it appears he could easily have been notified, was unjust and illegal. The assessment, therefore, upon these additional one hundred and thirty lots, must be set aside, and the total assessment of the prosecutor reduced to that extent.

The only other reason assigned that is material to be considered is, that the rate of this property is greatly in excess of the rate of assessment on adjoining and neighboring property. A specific remedy is provided for this by the act of 1848. It was held in *State* v. *Randolph*, 1 *Dutcher* 427, that if other lands in the township are assessed much below their value, it is no good ground for setting aside an assessment made upon a correct valuation, but the remedy of the latter is to appeal from his assessment, and at the same time apply to the commissioners of appeal under the act of March 9th, 1848, to raise such assessment as may be too low. The commissioners of appeal, under section three of the act of 1797, are also required, after due examination of the facts and consideration of the case, to give such judgment as shall be agreeable to the principles of justice. Under this general power, upon proper notice to the parties interested, I see no difficulty in adjusting and adjudging these taxes according to the principles of justice. This matter was before the board of assessors in their review of the assessments in the different wards of the city, and also before the commissioners of appeal, upon the appeal of the prosecutor. It was a question of fact for their determination; and by section three of the act of 1797, the judgment of the commissioners thereon is final and conclusive.

It was objected on the argument, though it was not included in the reasons for reversal, that the assessors of the city of Paterson and the county of Passaic, met on the second Monday in July, and not on the first Tuesday of September, as is required by the general law.

The special act of 1842, relating to taxes of the county of Passaic and city of Paterson, appoints the second Monday of

July, as the time for the meeting of the county board. This special act has never been repealed in express terms, and it would seriously embarrass the collection of taxes in the city of Paterson, as the charter now stands, to delay this meeting of the county board until the first Tuesday of September. There was, therefore, no error in their meeting and acting at the time and place they did.

Some other matters were argued at the hearing that are not included among the reasons for reversal, and no opinion is therefore expressed upon them.

Most of these, however, can be answered in general terms. In laying the burden of taxation upon the citizens of the state, while it must be the object of every just system to equalize this charge by a fair apportionment and levy upon the property of all, it is equally the duty of the courts to see that no one, by mere technicalities which do not affect his substantial rights, shall escape his fair proportion of the public expenses, and thus impose them upon others.

A liberal construction must, therefore, be given to all tax laws for public purposes, not only that the offices of government may not be hindered, but also that the rights of all taxpayers may be equally preserved.

For the reasons above given, the tax of the prosecutor must be reduced by deducting therefrom the tax assessed on one hundred and thirty lots, at the valuation of $40 per lot; and the balance of the tax is affirmed.

CITED in State, Combes, pros., v. Vanhorne, 10 Vr. 445; State, Curin, pros., v. Van Horn, 11 Vr. 145.